**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| CHARLES TILLMAN and AMBER HESSELBERG, *on behalf of themselves and all similarly situated persons*,<br><br>Plaintiffs,<br><br>vs.<br><br>PERSONIC MANAGEMENT COMPANY, LLC,<br><br>Defendant. | Case No.: 1:25-cv-02124-PTG-LRV<br><br>Hon. Patricia Tolliver Giles<br><br><u>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**</u> |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**</u>

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Personic Management Company, LLC ("Personic"), moves this court to dismiss the Consolidated Class Action Complaint (the "CCAC") filed by Plaintiffs Charles Tillman and Amber Hesselberg (hereinafter "Plaintiffs") for lack of Article III standing and failure to state any claim upon which relief can be granted. Alternatively, Personic further moves under Rule 23(c)(1)(A) and 23(d)(1)(D) to deny class certification of a 23(b)(3) class and strike the corresponding class allegations as it is apparent on the face of the complaint that the Plaintiffs cannot establish predominance of common issues.

## I. INTRODUCTION

The Plaintiffs are former patients[1] of Personic. They allege that their personal information was compromised as a result of criminal activity directed at a third-party platform used by Personic. Yet the Plaintiffs fail to plausibly allege that they have suffered any concrete injury as a

[1] Plaintiff Tillman also incorrectly alleges to be a former employee of Personic.

result of this data breach, or that such injury is imminent. Casting a broad net for some theory that might establish standing, the Plaintiffs assert claims for negligence, implied contract, unjust enrichment, breach of fiduciary duty, and declaratory relief. All these claims must be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or both.

The Court lacks subject matter jurisdiction over the Plaintiffs' claims because the Plaintiffs lack standing, which requires that a plaintiff show, among other things "an injury in fact that is concrete, particularized, and actual or imminent." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561 (1992). As the Fourth Circuit has held, claims that a plaintiff's information might later be posted to the dark web, might later lead to identity theft, or might be compromised in later data breaches are insufficient to establish an actual or imminent injury. *Holmes v. Elephant Ins. Co.,* 156 F.4th 413, 428 (4th Cir. 2025).

To the extent that any of the Plaintiffs' claims are not outside the Court's subject matter jurisdiction, the four theories of liability alleged in the CCAC should be dismissed because they fail to state plausible claims upon which relief can be granted.

***First,*** the negligence claim fails because the Plaintiffs have not plausibly alleged that they have suffered damages. As discussed above, nearly all of the harms allegedly suffered by the Plaintiffs have been rejected by the Fourth Circuit in Holmes as *not* conveying standing. A lone exception is Plaintiff Tillman's allegation that his information has been posted to the dark web. CCAC ¶ 79. But because this allegation is supported only by unspecified "alerts" that Plaintiff Tillman states he has received from unclear sources (CCAC ¶ 79), this allegation fails to satisfy plausibility pleading standards.

***Second,*** the breach of implied contract claim also fails to state a claim. As with the negligence claim, the Plaintiffs have not alleged any damages as a result of the data breach that



5373259.1

satisfy both Article III standing requirements and plausibility pleading standards. In addition to this threshold defect, the CCAC also "does not allege facts to show there was mutual assent between the parties to any terms" in Personic's Privacy Policy, or any other set of privacy practices that was the basis for a supposed implied contract. *Lugo v. Inova Health Care Servs.,* No. 24-cv-700-PTG/WEF, 2025 WL 905191, at *4 (E.D. Va. Mar. 25, 2025) (dismissing a claim for breach of implied contract in similar circumstances where the parties did not agree to specific privacy policies). Indeed, the Plaintiffs do not even claim that they were aware of Personic's data privacy policies or practices prior to providing their information to Personic.

***Third,*** the unjust enrichment claim fails – in part due to the aforementioned lack of damages that satisfy both Article III and plausibility pleading standards – but also because the Plaintiffs have not pled plausible facts to suggest that they paid Personic a premium for medical services due to an expectation that Personic would comply with certain data security measures that it ultimately ignored, or that Personic was aware that it had accepted or retained this premium. *See Firestone v. Wiley,* 485 F. Supp. 2d 694, 704 (E.D. Va. 2007).

***Fourth,*** the breach of fiduciary duty claim fails to state a claim, as it is based upon a supposed fiduciary duty that simply does not exist in Virginia law. *See Parker v. Carilion Clinic,* 819 S.E.2d 809, 824 (2018) (while medical providers have a duty not to disclose patient's medical information, this does not extend to a duty to protect patient's medical information from disclosure by others).

Respectfully, each of the Plaintiffs' claims must be dismissed as either lacking Article III standing, failing to state a claim, or both. To the extent that any of the Plaintiffs' claims survive, Personic moves to deny class certification of a class under Fed. R. Civ. P. 23(b)(3), and additionally strike such class allegation pursuant to Fed. R. Civ. P. 23(d)(1)(D). Given the widely varying allegations offered and injuries alleged to have been suffered by the Plaintiffs and putative class

members, individualized questions of actual harm, causation, and standing would predominate over any common questions shared by all class members.

## II. FACTUAL BACKGROUND

Personic is a management services organization, with offices in Vienna, Virginia, that manages professional entities, including physician-owned healthcare service providers in twelve (12) states. *See, e.g.*, CCAC, at Ex. A. On September 1, 2025, Personic was alerted to unauthorized activity involving a third-party software platform the company uses to process patient information (the "Platform"). *Id.* After learning of the activity, Personic promptly initiated a comprehensive investigation with the assistance of third-party experts to determine the circumstances surrounding the incident and notified law enforcement authorities. *Id.* The investigation determined that an unauthorized actor accessed the Platform on August 29, 2025, and acquired certain data. *Id.* With the assistance of a third-party data review expert, Personic conducted a comprehensive review to determine what data had been accessed and acquired, whether the data contained Personal Health Information ("PHI"), and to whom the information pertained. *Id.* On October 13, 2025, the review determined that PHI was subject to unauthorized access and acquisition. *Id.*

The information involved varies by individual but includes one or more of the following types of PHI: name, address, date of birth, full or partial Social Security number, driver's license number, date of service, diagnostic treatment information, insurance information, Medical Record Number, medical history, medications, patient number, provider name, surgical information, and treatment location. The notification letter sent to residents identifies the specific data elements involved for each individual receiving notice. In the ordinary course of its business, Personic's affiliates collect Personal Identifying Information ("PII") and PHI from patients, including names, addresses, dates of birth, Social Security numbers, driver's license numbers, medical records, and insurance information, as a condition of providing healthcare services. CCAC ¶¶ 2, 19, 28.

After learning of the breach, Personic promptly initiated an investigation, used third-party experts, notified impacted individuals, and even paid a ransom of $150,000 to prevent the hacker from doing anything nefarious with the stolen information. Additionally, Personic offered twenty-four months of complimentary credit monitoring and identity protection services to all potentially affected patients. CCAC ¶ 27.

Plaintiff Tillman does not allege that his PII or PHI has been used in identity theft or fraud, that his PII or PHI was shared or transacted by the hacker with any third party, or how Personic benefitted from his PII, his PHI or from the attack. The CCAC alleges that Tillman was both a former employee and patient of Personic. CCAC ¶ 114. Upon information and belief, Tillman has never been employed by Personic and there is no distinct theory of liability premised on an employment relationship.

In sum, the Plaintiffs do not allege their PII or any other PII from the breach has been used in identify theft or fraud. They do not allege any sharing or transaction of their PII or PHI by the hacker with another third party. And they do not allege how Personic benefitted from the Plaintiffs' PII or PHI itself or from the cyber-attack.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a pleading based on a lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). As the party invoking federal jurisdiction, the plaintiff "bears the burden." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A defendant can challenge subject matter jurisdiction in two ways: by alleging "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based" – a facial challenge – or by alleging "that the jurisdictional allegations of the complaint are not true" – a factual challenge. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

Under a facial attack, "all the facts alleged in the complaint are assumed to be true and the plaintiff . . . [has] the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams*, 697 F.2d at 1219. In a factual challenge, "[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Id.*

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet the standard of "facial plausibility," the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The standard "asks for more than a sheer possibility that a defendant…acted unlawfully." *Id.* Although as "tested a Rule 12(b)(6) motion" a court is to "assume the truth of all facts alleged in the complaint[,] . . . [it] need not accept the legal conclusions drawn from the facts." *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000). The court also "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

As the Fourth Circuit recently clarified, Fed. R. Civ. P. 23(c)(1)(A) is the proper source of authority for a court's decision to deny class certification, regardless of whether that decision is made at the pleading stage or later. *Oliver v. Navy Fed. Credit Union,* 167 F.4th 106, 111 (4th Cir. 2026), quoting Timothy A. Daniels, *Challenging Class Certification at the Pleading Stage: What Rule Should Govern and What Standard Should Apply?*, 56 S. Tex. L. Rev. 241, 271 (2014) ("we hold that 'the appropriate procedure for a defendant to challenge class certification'—at the pleading stage or any other time—is to make 'a motion to deny class certification under 23(c)(1)(A), coupled with a motion to strike under 23(d)(1)(D) should the motion to deny class

certification be granted").

## IV. ARGUMENT

### A. The Plaintiffs Lack Standing

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). Paramount in this "is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013) (citation omitted). The Plaintiffs "carry the burden of establishing their standing under Article III." *DaimlerChrysler Corp.*, 547 U.S. 332 at 342. In order to establish standing, plaintiffs must allege that they "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

In a class action, "named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n. 20 (1976) (quoting *Warth v. Seldin,* 422 U.S. 490, 501 (1975)). Failure to sufficiently allege an "actual" or "imminent" injury requires dismissal. *See Spokeo*, 578 U.S. at 339. In addition, "[e]very class member must have Article III standing" in order to recover as part of a class action suit. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021).

#### 1. The Plaintiffs Fail to Allege That They Suffered Any Actual Injury Because They Fail to Allege any Identity Theft or Fraud

The CCAC does not allege identity theft or fraud actually caused by the incident. Instead, the Plaintiffs claim other alleged injuries which do not meet plausibility pleading requirements.

Both Plaintiffs allege that they have received a large volume of spam phone calls. CCAC

¶¶ 121–122; 135. Plaintiff Hesselberg alleges bank fraud and debit card replacements, but the CCAC offers no non-conclusory facts tying these events to data sourced from Personic's systems, as opposed to ubiquitous, unrelated causes of card fraud and spam. CCAC ¶¶ 134–135. Critically, bank account numbers are not among the data types listed as compromised in the Notice Letter (Exhibit A). Such threadbare attributions do not establish a concrete injury fairly traceable to Personic. *See Bednyak v. Fin. Risk Mitigation, Inc.,* 739 F. Supp. 3d 353, 370 (E.D. La. 2024) ("where the plaintiff has suffered no actual misuse of his PII…courts generally conclude that an increase in spam calls, texts, and/or emails without more is not sufficient to support standing").

Other injuries alleged in the CCAC have been specifically rejected in this circuit as theories that do *not* establish standing. The Plaintiffs' central allegation is that their information was included in a recent data breach which could subject them to future fraud or identity theft, as well as future data breaches which could then trigger more future fraud or identity theft. *See e.g.* CCAC ¶ 83 (alleging that the Plaintiffs' personal information could later end up on the dark web); ¶ 111 (alleging that because of data breach, the Plaintiffs and putative class members "are at an increased risk of fraud and identity theft for many years into the future"); ¶ 228 (warning of "further compromises of [the Plaintiffs'] Private Information [that] will occur in the future"). The Plaintiffs also allege that they have lost time and experienced emotional distress as a result of these hypothetical future injuries. CCAC ¶ 79.

These allegations run headlong into settled law. The Fourth Circuit is explicit that neither the future risk of personal information being posted to the dark web, nor the "increased risk of identity theft" after a data breach, nor "the risk that another data breach may [occur]" are sufficient to establish standing, because they do not meet the "actual or imminent" prong of the *Lujan* standing test. *Holmes v. Elephant Ins. Co.,* 156 F.4th 413, 428 (4th Cir. 2025). Neither can lost time preventing future identity theft, or emotional distress relating to future identity theft establish

standing. *Id.* ("the lack of imminent injury prevents the plaintiffs from bootstrapping their way into standing for damages solely by expending time or alleging emotional distress"). But here, the CCAC reads like a catalogue of data breach standing theories that have been rejected in this circuit.

While *Holmes* did note that a plaintiff whose information has already been posted to the dark web can demonstrate Article III standing, *see Holmes*, 156 F.4th at 428, only Plaintiff Tillman even alleges that his information is already on the dark web. (And as discussed elsewhere, this allegation is not pled credibly). In contrast, Plaintiff Hesselberg does not allege dark web exposure at all, and fails to allege any injury recognized by *Holmes* as conveying standing.

#### 2. The Plaintiffs' Supposed Diminution of Value in the PII and PHI Cannot Establish Standing

The Plaintiffs also allege they suffered an injury consisting of "damage to and diminution in the value of their Private Information." CCAC ¶¶ 120, 133. This theory does not confer standing, and has been specifically rejected by this Court in a case involving similar facts. *Podroykin v. Am. Armed Forces Mut. Aid Ass'n,* 634 F. Supp. 3d 265, 272 (E.D. Va. 2022). In *Podroykin*, Judge Ellis noted that "many courts have 'routinely rejected the proposition that an individual's personal identifying information has an independent monetary value'" that is capable of suffering damage or diminution. *Id.,* quoting *Welborn v. Internal Revenue Serv.,* 218 F. Supp. 3d 64, 78 (D.D.C. 2016). But even according to courts that do accept this theory, notes Judge Ellis, standing still requires "allegations of some concrete injury" relating to this diminution in value, such as "lower credit scores" or "fraudulent accounts and tax returns ... filed in [plaintiff's] name[.]" *Id.,* quoting *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,* 440 F. Supp. 3d 447, 462 (D. Md. 2020). In this case, as in *Podroykin*, the Plaintiffs have made none of those necessary allegations. The Plaintiffs explained not shown *how* their PII's value has been diminished — therefore, this allegation cannot confer standing.

### B. The Plaintiffs' Claims Also Fail under a 12(b)(6) Analysis

To the extent that any of the Plaintiffs' claims fall within the Court's subject-matter

jurisdiction, the Court should nonetheless dismiss all claims for failure to satisfy Rule 12(b)(6).

### 1. The Plaintiffs Fail to State a Claim for Negligence

The Plaintiffs fail to state a claim for negligence, because they have not plausibly alleged that they have suffered damages, which is a required element of negligence under Virginia law. *See Manchester Oaks Homeowners Ass'n, Inc. v. Batt,* 732 S.E.2d 690, 699 (Va. 2012) ("proof of damages is an essential element [in a negligence claim] and a plaintiff's failure to prove it requires that the action be dismissed"). As discussed above, nearly all the harms supposedly suffered by the plaintiffs are ones that the Fourth Circuit in *Holmes* found do not establish standing.

The few additional harms that the Plaintiffs propose fail to meet plausibility pleading standards. Plaintiff Tillman claims that his private information was "found on the dark web." CCAC ¶ 79. But this allegation is supported only by indeterminate "alerts" that Plaintiff Tillman claims he has received from unattributed sources (CCAC ¶ 79). Thus, Plaintiff Tillman has not plausibly alleged that his information is, in fact, actually listed on the dark web or that this listing is, in fact, attributable in any way to the Defendant. *See Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (to survive a motion to dismiss, a complaint must be "facially plausible" and supported by "well-pled factual allegations").

In a 2022 decision, the U.S. District Court for the District of Kansas found that a plaintiff who offers the threadbare allegation that his information has been "found on the 'dark web'" after a data breach does not plead a "plausible connection to Defendant's actions." *Blood v. Labette Cnty. Med. Ctr.,* No. 22-cv-04036-HLT-KGG, 2022 WL 11745549, at *8 (D. Kan. Oct. 20, 2022). This allegation was "conclusory and unsupported by facts." *Id.* As the court put it:

> [Plaintiffs'] "dark web" allegation lacks a plausible connection to Defendant's actions. [Plaintiffs] simply allege that "[s]ince [Defendant's] Data Breach, the [Plaintiffs] have been notified that their PII was found on the 'dark web.'…But when were they notified? Was the PII on the dark web before the breach and were they only notified later? And what PII was "found"? Does it match the PII stolen in the data breach? And is Defendant's database the only place this information was available?...Again, this is information in the hands of the [Plaintiffs], not Defendant. Plaintiffs' allegations are conclusory and unsupported by facts. This is not enough.

*Id*. Similarly, Plaintiff Hesselberg, who claims to have suffered "fraudulent charges to her bank account" and "spam telephone calls" has failed to demonstrate traceability, and therefore has not plausibly alleged damages. CCAC ¶¶ 134; 135. As mentioned above, Plaintiff Hesselberg's bank information was not included in the information she was notified had been compromised. (Exhibit A). And "[i]n a world where we all suffer through spam and texts and emails that had nothing to do with [any one given] data breach," the bare allegation of having received unwanted spam phone calls is hardly a well-pled claim. *Bednyak,* 739 F. Supp. 3d at 370.

**2. The Plaintiffs' Implied-in-Fact Contract Claim Fails**

The Plaintiffs allege that when they "provided their [PII] to Defendant as a condition of receiving medical services from Defendant, they entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify the Plaintiffs and the Class if their data had been breached and compromised or stolen." CCAC ¶ 187. The Plaintiffs further allege that Personic "breached the implied contracts it made with Plaintiffs and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiffs and the Class once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach." CCAC ¶ 200.

Yet the CCAC "does not allege facts to show there was mutual assent between the parties to any terms" in Personic's Privacy Policy, or any other set of privacy practices that was the basis for a supposed implied contract. *Lugo,* 2025 WL 905191 at 4. In *Lugo*, this Court dismissed a claim for breach of implied contract in similar circumstances where the plaintiff failed to demonstrate that the parties had agreed to follow any specific data policies as a condition of their agreement to do business. The same analysis applies here. While the Plaintiffs' correctly note that Personic has a Privacy Policy, they do not allege that they were aware of it when they became Personic patients, or that this policy

was somehow a condition of their willingness to transact with Personic in the first place.

Even assuming *arguendo* that we ignore the lack of mutual assent, this claim nevertheless fails because the Plaintiffs fail to allege two hallmarks of an implied-in-fact contract claim: a benefit conferred in exchange for payment, and a concrete harm resulting from the alleged breach of the agreement.

To recover under a contract "implied-in-fact," a plaintiff must allege "facts to raise an implication that the defendant promised to pay the plaintiff for such benefit." *Nedrich v. Jones*, 245 Va. 465, 476 (Va. 1993) (internal quotation marks omitted) (declining to find an implied-in-fact contract where the defendant never promised to pay for the benefit). Here, the Plaintiffs do not allege that Personic promised to pay or suggested it would pay for their PII. But the reality is simpler: the Plaintiffs – individually or as a whole – transacted with Personic to obtain medical services. Instead, the Plaintiffs allege that they "paid money to Defendant with the reasonable belief and expectation that Defendant would use part of their earnings to obtain adequate data security." CCAC ¶ 196. But this framing ignores the contract itself: the consideration of providing PII was related to receiving medical care. There was no separate consideration exchanged for data security services. And to the extent that Plaintiffs argue that *all* contracts for services that will involve the sharing of PII or PHI also include implied contract terms mandating specific cybersecurity standards, the Plaintiffs offer no legal authority for this broad and sweeping assertion.

The claim also fails because the Plaintiffs do not allege any damages that flowed from the purported breach of implied-in-fact contract. Even if there were an implied-in-fact contract, a data breach, without more, would not "diminish…the benefit-of-the-bargain." *Rudolph v. Hudson's Bay Co.*, No. 18-cv-8472-PKC, 2019 WL 2023713, at *8 (S.D.N.Y. May 7, 2019). Without alleging that a third party has misused the data, the Plaintiffs cannot claim that they received anything other than what they bargained for, which was medical services. *See C.C. v. Med-Data Inc.*, No. 21-cv-2301-

DDC-GEB, 2022 WL 970862, at *9 (D. Kan. Mar. 31, 2022). Without properly alleging damages, the Plaintiffs may not sustain an action for an implied-in-fact contract. *See Aponte v. Northeast Radiology, P.C.*, 21-cv-5883-VB, 2022 WL 1556043, at *4–5 (S.D.N.Y. May 16, 2022).

**3. The Plaintiffs' Unjust Enrichment Claim Fails Because the Plaintiffs Have Not Explained What Premium Personic Received to Provide a "Reasonable" Amount of Cybersecurity.**

The Plaintiffs next argue that Personic engaged in "unjust enrichment" by accepting a "monetary benefit" from patients who expected a "reasonable level of security" and then "saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Private Information." CCAC ¶ 206–208.

This theory is a nod towards Virginia's cause of action for unjust enrichment, which requires a plaintiff to demonstrate the following three elements: "(1) [that] he conferred a benefit on [the defendant]; (2) [that the defendant] knew of the benefit and should reasonably have expected to repay [the plaintiff]; and (3) [that the defendant] accepted or retained the benefit without paying for its value." *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (Va. 2008).

In this case, the Plaintiffs have not pled facts that would support this theory. They have not alleged, for example, that Personic was aware that it had been paid some sort of premium to provide an (unsaid and undefined) "reasonable level of security," and which Personic retained instead of investing in cybersecurity. Such an allegation is plainly required, under element (2) of the elements laid out in *Schmidt*. This Court has refused to accept this sort of "bare factual allegations" which "fail to allege the elements of unjust enrichment." *Firestone v. Wiley,* 485 F. Supp. 2d 694, 704 (E.D. Va. 2007). The Court should do the same here.

**4. Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty**

The Plaintiffs allege that Personic became a fiduciary by virtue of being a "trusted medical provider and guardian" of their PII, and that Personic owed duties to safeguard, timely notify, and


5373259.1

maintain accurate records. CCAC ¶¶ 217–218. This claim fails for two independent reasons. First, Virginia law does not recognize a fiduciary duty to protect PII from third-party data theft in these circumstances. The provision of medical services does not render Personic a fiduciary over its patients' data as against third-party cybercriminals. The Supreme Court of Virginia's decision in *Parker v. Carilion Clinic*, 296 Va. 319 (Va. 2018), which refused to extend a healthcare provider's duties to cover protection of patient information from third-party theft, forecloses this theory in the healthcare context. Second, as with the other counts, the Plaintiffs again fail to allege cognizable damages proximately caused by Personic's conduct. No concrete loss traceable to actual misuse of data from this breach is pleaded. Count IV should be dismissed.

**5. Plaintiffs Are Not Entitled to Declaratory or Injunctive Relief**

Without Article III standing and a viable underlying claim, declaratory and injunctive relief are unavailable. The CCAC seeks broad relief – including lifetime credit monitoring, mandatory third-party security audits, encryption mandates, data deletion orders, a cloud storage prohibition, and comprehensive employee training programs – predicated on alleged ongoing risks and purported inadequacies. CCAC ¶¶ 223–233.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, does not create an independent cause of action; it provides a remedy only where a cause of action otherwise exists. If Counts I through IV are dismissed, Count V necessarily fails with them.

Independently, the Plaintiffs lack standing for prospective injunctive relief. To obtain such relief, plaintiffs must demonstrate a real and immediate threat of future injury – not merely past harm already suffered. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). The Plaintiffs' injuries, if any, arose from the August 2025 breach that has already occurred. The prospect of a future unrelated breach at Personic is speculative and cannot support prospective relief.

Finally, the Plaintiffs' assertion that Personic's "data security measures remain inadequate" (CCAC ¶ 228) is again a conclusory allegation unsupported by specific factual allegations about Personic's current security posture. That assertion similarly cannot satisfy the plausibility standard of *Iqbal*, 556 U.S. at 678. Count V should be dismissed.

### C. Even if some of the claims for relief survive the 12(b)(1) and 12(b)(6) motion, the Court Should Deny Certification of a 23(b)(3) Class and Strike the Class Claims Under Rule 23(b)(3) Since the Plaintiffs Cannot Establish Predominance of Common Issues

Pursuant to Rule 23(c)(1)(A)[2], courts have discretion to deny class certification at the pleadings stage where the complaint fails to make a out a sufficient *prima facie* showing to justify a class. *Oliver v. Navy Federal Credit Union* (4th Cir. 2006) 167 F.4th 106, 115 (court properly denied class certification given the variations in each plaintiff's individuals circumstances regarding their loan applications in a discriminatory lending case) Once the Court denies class certification, the court may strike the class allegations under Rule 23(d)(1)(D). *Id*. at 111-12.

The Plaintiffs allege that, "[a] class action is superior to other available methods for the fair and efficient adjudication of this controversy" and "claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members." CCAC ¶¶ 146, 147. Superiority and predominance of common questions are attributes necessary to certify a class seeking monetary damages under Rule 23(b)(3).

To satisfy the commonality requirement of Rule 23(a), the Plaintiffs must show commonality. In other words, the Plaintiffs must show that putative class members' claims "depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "What matters to class certification . . . is not the raising of common questions—even in droves—but

---

[2] Rule 23(c)(1)(A) provides that the court shall determine by order whether to certify the action as a class action, "at an early practice time."

rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (internal quote marks and emphasis omitted).

Even if a proposed class can show commonality under Rule 23(a), the proposed class must also meet Rule 23(b)(3)'s predominance requirement. The Rule 23(b)(3) predominance requirement "is 'far more demanding' than Rule 23(a)'s commonality requirement and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 362 (4th Cir. 2004), quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623–24 (1997). In cases in which "individual issues" such as the need to determine "individualized proof of damages" are critical, these individual issues "may defeat predominance" and preclude class certification. *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 147 (4th Cir. 2001).

From the jump, the CCAC's allegations present predominance problems given the individualized issues of causation, injury, and damages. The CCAC alleges a putative nationwide class of all persons whose Private Information was compromised, estimating approximately 11,000 members. CCAC ¶¶ 139–143. The named Plaintiffs' disparate and individualized experiences – Tillman alleging dark web alerts and suspicious account-opening calls, Hesselberg alleging bank fraud and spam calls culminating in a phone number change – underscore that injury, causation, and damages would require person-by-person proof, thus requiring thousands of mini-trials which defeat Rule 23(b)(3) predominance. The Court should, therefore, deny class certification of a class under Rule 12(b)(3), and additionally strike such class allegation pursuant to Rule 23(d)(1)(D).

[THIS SPACE INTENTIONALLY LEFT BLANK]

## V. CONCLUSION

For these reasons, the Plaintiffs' Consolidated Class Action Complaint should be dismissed without prejudice.

***/s/ Gregory Rosen***
Gregory P. Rosen / VA 82584
ROGERS JOSEPH O'DONNELL
1500 K Street, N.W., Suite 800
Washington, D.C. 20005
grosen@rjo.com
Tel: (202) 777-8952

Jules L. Szanton (*pro hac vice*)
ROGERS JOSEPH O'DONNELL
1500 K Street, N.W., Suite 800
Washington, D.C. 20005
jszanton@rjo.com
Tel: (202) 777-8957

Dennis Chi-Yu Huie (*pro hac vice*)
ROGERS JOSEPH O'DONNELL
311 California Street, 10th Floor
San Francisco, CA 94104
dhuie@rjo.com
Tel: (925) 385-8676

Lisa Norrett Himes (*pro hac vice*)
ROGERS JOSEPH O'DONNELL
1500 K Street, N.W., Suite 800
Washington, D.C. 20005
lhimes@rjo.com
Tel: (202) 777-8953

Nadia M. Hamade (*pro hac vice*)
Personic Management Company LLC
General Counsel
8133 Leesburg Pike, Ste. 630
Vienna, VA 22182
nhamade@personichealth.com
Tel: (248) 345-3343

**Certificate of Service**

I hereby certify that on April 13, 2026, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

***/s/ Gregory Rosen***
Gregory P. Rosen / VA 82584